This appeal concerns the rejection of a treating physician opinion and the uponment of Ms. David's testimony by a Social Security Administrative Law Judge. The improperly rejected evidence supports a finding that Ms. David was disabled due to an inability to sustain full-time sedentary work as a result of fibromyalgia and associated conditions. It is not disputed in this case that Ms. David suffers from fibromyalgia. The dispute centers on the limitations caused by this condition. Turning to the first point, Dr. Bakken, the treating physician's opinion. Dr. Bakken assessed Ms. David with very specific limitations that he deemed reasonable in light of his training and experience with fibromyalgia, as well as his specific knowledge of Ms. David's condition. And that included a 30-page questionnaire, examination findings such as palpable tender spots, and her response to various treatments, which were extensive in this case. They included trigger point injections, chiropractic manipulations, physical therapy, massage, pain medication, and that was very strong pain medication including fentanyl patches, stimulant medication, antidepressants, and anti-anxiety medication. Dr. Bakken identified some specific limitations and he linked them to Ms. David's medical conditions. For example, he opined that she could only occasionally handle objects, and he explained that that was because she was dropping them due to hand numbness. He limited her walking because she tripped due to foot and leg numbness. And he found that she needed to lie down for 30 minutes to two hours, one to three times a day, and would be expected to miss four or more days of work per month due to pain, fatigue, and migraines associated with fibromyalgia. He also opined that walking on a regular and continuous basis would cause her condition to deteriorate. Counselor? Yes? Sure. Was the ALJ required to accept Dr. Bakken's opinion? No, an administrative law judge can reject opinion evidence if the administrative law judge complies with the court standards. As you said, the administrative law judge was required to provide specific and legitimate reasons for rejecting that opinion. And so is it your position that there were no specific and legitimate reasons given by the ALJ? Yes, it is. Is your position particularly informed by the fibromyalgia context, whether in those cases or otherwise, i.e., is there something about the way the ALJ proceeded here that is subject to particular scrutiny because of the fibromyalgia context? Well, Your Honor, if I understand your question, yes, absolutely. Fibromyalgia is at the center of this case. Now, in fibromyalgia cases, there are no objective findings, in the sense that you might find in an orthopedic case where there would be an MRI that would show a finding that explains pain, or in an MS case where there would be lesions in someone's brain that could account for the limitations. Fibromyalgia was diagnosed and accepted in this case, and the administrative law judge did not address with specificity all of the limitations assessed by Dr. Beckin. However, she did point to a lack of objective findings. Now, as I said, there aren't objective findings in the sense that you might find in another case, as stated in the Revels case, also in Social Security Ruling 12.2p. Counsel, is it your position that a diagnosis of fibromyalgia automatically entitles one to Social Security benefits? Absolutely not. There are plenty of people with fibromyalgia who are able to work. In this case, Ms. David had been working with her doctor for many, many months, years, in fact. The administrative law judge should give deference, as stated in Revels, to an expert who is familiar with the condition. It's all the more important in a fibromyalgia case to really defer to a medical expert. In this situation, the judge did not make very specific findings. She talked about a lack of objective evidence, but the objective findings that she cited, range of motion in particular, are not associated with fibromyalgia. She didn't provide any medical basis to support her own finding that there would be a lack of range of motion. She also cited an EMG, which is an electromyogram. Now, EMGs are used to diagnose carpal tunnel symptoms and neuropathy, but there's no evidence that EMGs diagnose or even point to any limitations in a fibromyalgia case. Same with normal strength. In fact, in Revels, they cite normal strength as one of the areas that would be normal in a fibromyalgia case, even though the person is limited. The problem is that flare-ups are caused in fibromyalgia cases by excessive activity, and that's what Dr. Boggan was getting at. She had numbness, she had fatigue, this was all documented. Counsel, I have a question about Dr. Boggan. I think the record was a little unclear about whether Dr. Boggan is a rheumatologist, and can you clarify for us whether Dr. Boggan is a rheumatologist, or if not, what qualifications render him a fibromyalgia specialist? Sure. Dr. Boggan is a DEBO, a doctor of osteopathy. He has a pain clinic that focuses on – he is one of two doctors in a pain clinic. So he has treated many fibromyalgia patients, but he is not a rheumatologist. But there was a rheumatologist who did examine the claimant, correct? I believe so, yes. When the diagnosis was made, there is no requirement that the diagnosis be made by a rheumatologist. But you said previously that someone who is a specialist in the area, their opinion is entitled to deference. Well, Dr. Boggan is a specialist in the area of pain disorders. But we're talking about fibromyalgia as being informing your argument regarding the ALJ's lack of substantial evidence. Yes, in the sense that fibromyalgia is a pain disorder, and also because of the case law and the Social Security ruling pertaining to fibromyalgia. That is how I mean that it informs this case. This is not a case that should be approached like in orthopedic or a neurology case. That is what I meant. If a rheumatologist who specializes in fibromyalgia disagreed with Dr. Boggan, is it your position that Dr. Boggan's opinion should still prevail? Under the regulations applicable at this point in time, the factor that an individual is a rheumatologist would be a factor for the administrative by-judge and the court to consider. However, a treating physician would have gotten the most weight, and Dr. Boggan was a treating physician. Is there another considering physician, a doctor, Dr. Anderson? Yes, but Dr. Boggan was overseeing her. As you said, there were reports from Dr. Anderson. And were there records? Is there record material from Dr. Anderson? From BaltiCare, yes. And was he in general accord with Dr. Boggan? We don't have an opinion from Dr. Anderson, a medical source opinion, so there's no evidence that he was in general accord, but he accepted the diagnosis and the treatment. And is he mentioned in the ALJ opinion? He is not mentioned as an opinion provider, no. Why does he need to be an opinion provider? I mean, the question is whether the medical records support her reports, and if he had some information that supported her, should he have been mentioned? Mr. Kennedy, the opinion has to have medical records that support her self-reported mutations. Well, the administration of blood tests should consider the entire record. Did he consider Dr. Anderson? I don't see that she did consider Dr. Anderson's findings. Yes, sir. I don't actually have time, so I'll leave you up in the air. Yes. Thank you. Yes. Well, Mr. Roberts, just like I'm looking at the active commissioner, there is no question that Ms. David has fibromyalgia and that she has severe limitations from that condition. In fact, the ALJ found so. The ALJ limited Ms. David to a very restrictive RFC in this case, specifically a narrow range of sedentary work with multiple postural limitations, limitations on the kinds of work environments that she can function in. And even went so far as to include jobs involving a relatively low reasoning level with limited interaction on the job. Now, the ALJ found that Ms. David was not as limited as she claimed or as Dr. Bakke claimed on some forms that he filled out. And the question before this Court is a limited one. Does more than a mere scintilla of evidence support those findings? And the answer in this case is yes. When we look at Dr. Bakke's treatment right now. A mere scintilla come from, I thought it was substantial evidence. Substantial evidence is defined as more than a mere scintilla of evidence. That's from Supreme Court case law, Richardson v. Corrales, most recently the Supreme Court's case law in BSEC. This Court referred to that standard recently in the court decision. So the question is, does more than a mere scintilla of evidence support the ALJ's factual findings in this case about the claimants' subjective complaints and about Dr. Bakke's opinion? And when we look at Dr. Bakke's opinion. Dr. Bakke had been treating this woman for many years, right? Correct. And what was the basis for disregarding his giving it little weight? The ALJ gave reasons. The simpler side of diagnosis are a report of symptoms, but that's basically what happens in pharmacology. And it's a question of the doctor being sufficiently familiar with her. In many instances you have, you know, doctors, you know, two or three or four times. This doctor had as much familiarity with her as a medical doctor could, actually. And to disregard his opinion because it was based on his own report of symptoms seemed to be inconsistent with the pharmacology policy statements and our case law. Well, I would disagree, Your Honor, that the ALJ didn't provide valid reasons for discounting Dr. Bakke's opinion. If you look on page 23, as Your Honor was reading, and I was having a shot for it. 24, I'm sorry, 24. The ALJ says that Dr. Bakke essentially did not provide support for his opinion by essentially adopting the claimants' subjective complaints. But the ALJ goes further. The ALJ also said that Dr. Bakke's opinion is at odds with his treatment records as well as the overall record. And in this case, in this court's board decision, the court was very clear that the ALJ is not required to adopt a treating doctor's opinion at face value. The ALJ needs to delve deeper. And when there is a conflict or an inconsistency between that doctor's opinion and his own treatment notes, again, this is a report decision. But does he say that it was against his own treatment notes? On page 24, it states, after the sentence that Your Honor read about simply reciting the diagnoses, these determinations. That's not supported by his examination records. It doesn't say it's contra-checked by his examination records. That's stupid. Well, the determined ALJ is saying there that the determinations are not supported by his own examination records. It's quite different than saying it's contra-checked. Okay. It is getting at the same point, Your Honor, which is that an ALJ needs to look, again, under Social Security's regulations under Ford, this is 20 CFR 404, 15, 27, C4. If there is tension between the doctor's opinion and the doctor's treatment records, then we have a valid basis to discount it. And when we look at Dr. Bakken's records on multiple occasions, Dr. Bakken has indicated that she's a functioning member of society with controlled pain levels. I mean, to me, that really is the strength of those records, that of his opinion, is that they are detailed and nuanced. So sometimes he says she's doing well, and other times he says she's doing poorly, and he seems to be extremely well acquainted with her variations. If they were uniformly shorthand for repeating the same thing all the time, then you would have less confidence in her, not more, it seems to me. In other words, the fact that some of the time, but not others of the time, he says she's functioning and sometimes he says she's doing very badly, makes them more credible, not less credible. Well, I would disagree, Your Honor. If we look at those treatment records, it's more than just a few times that Dr. Bakken is indicating that she's doing well. I think I counted over two dozen times where there are indications in these records that show Dr. Bakken stating that her pain levels, that she's getting good pain relief, that she's a functioning member of society with pain control. In fact, he reports on multiple occasions that she's receiving over 50% improvement in her symptoms, and NARJ even points this out on page 23 of her decision, where Dr. Bakken is saying that she's experiencing 50% relief. And when we look at what David is telling Dr. Bakken, yes, Your Honor is absolutely correct that there are fluctuations in symptoms, that she's not walking into that office every time and saying, I'm feeling no pain, I have no limitations, but she is saying on multiple occasions that her pain levels are a 3 or a 4 out of 10, which is not insignificant, but it stands at odds with the doctor's later opinion that she can't lift even more than 5 pounds and she can stand for only a matter of minutes. Dr. Bakken went so far as to even say she could not reach at one point. And with the ALJ... Counsel, I have a question. So you're focusing on the substantial evidence issue here. Was it not the legal error for the ALJ and ultimately the magistrate judge to ignore the fibromyalgia framework established in SSR 12-2P and this Court in Rebels? No, Your Honor, there's no legal error here. And this is why. SSR 12-2P does not say, as the plaintiff argues essentially this morning, that objective medical evidence is irrelevant in fibromyalgia cases. And this Court didn't say that in Rebels either. It is relevant. The problem in Rebels was that the ALJ seemed to misunderstand the nature of the fibromyalgia by failing to consider the longitude of the record, finding a lack of objective support for fibromyalgia symptoms, which, as 12-2P says, those symptoms can wax and wane. So it's very important for the ALJ to consider, and 12-2P says this, the longitudinal picture, the longitudinal record. And here the ALJ did that. So it's a different case than Rebels. The ALJ looked at the longitudinal record and found that there was improvement throughout Dr. Boggan's records, improvement of the plaintiff's symptoms. So it's not to say that medical evidence is not relevant in fibromyalgia cases. It clearly is. But when we have multiple occasions where a doctor who has seen her is saying that she's experiencing some relief, multiple occasions where she's saying that she, in between visits, she's had a 3 or a 4 out of 10 on the pain scale, those findings stand at odds with what Ms. David told the ALJ about being essentially able to lift 5 pounds, and that's about it. Any other questions? Yes? I just wanted to thank you, too. The only discussion with Dr. Boggan was with the aircraft, and I believe that's the truth. In terms of weighing the opinion, yes, Your Honor, that's where the ALJ weighed in. You made some representations about what was said about it, but very, very little was said about it. It says, these determinations are not supported by his own examination records. It doesn't really say why. You said that she noted that there was improvement over time. I'm not sure what you mean. I will see where that ends. I'm sorry, Your Honor. I can direct Your Honor to where the ALJ also discusses Dr. Boggan's opinion on the page before where the ALJ is talking about what these medical records show. It says, during this time period, the claimant also received pain management for fibromyalgia symptoms from Kenneth Boggan, who treated the claimant with a combination of narcotic medications and monthly trigger-point injections. And in that, if we read a couple of sentences down, it says, the other side notes the claimant routinely indicated stable pain symptoms, which decreased as much as 50% in severity over time. And then on page 25, where the ALJ is sort of summarizing what her overall treatment records show, again referring to the pain management that Dr. Boggan provided, the ALJ says, the objective medical evidence also demonstrates the claimant's symptoms were well managed with pain management modalities, and she remained largely stable in terms of symptoms and functionality for several years. So we have what SSR 12-2P requires in this case, which is for the ALJ to consider the nature of fibromyalgia, take a longitudinal perspective, and make a finding about it. And again, the standard overview here indicates that as long as that finding is rational, as long as the ALJ's interpretation of that record is a reasonable interpretation, then this court must affirm. Also, Judge Brezan asked about Dr. Anderson. Do you have a response to her question regarding whether or not Dr. Anderson should have been specifically discussed by the ALJ? I do, Judge Rawlinson. I did not see in the ALJ's decision a specific reference to that doctor. I may have missed it. But at bottom, this court doesn't require an ALJ to discuss every treatment record. I believe it's the court's Howard decision that talks about how an ALJ needs to discuss probative evidence. And here, I don't even believe that David is alleging that the ALJ missed something from that doctor or somehow came short-stripped to the medical treatment records from that facility. The ALJ gave a summary of the medical record and really focused on the pain management that she was receiving from Dr. Boggan, who specialized in treating that condition. So the ALJ's decision offers enough articulation for this court to discern the basis for the ALJ's findings. Okay. Thank you very much, Judge Brezan. Thank you, Judge Rawlinson. Thank you, Byron. Ms. Nagan, did you have any? Are you unmuted? Yes, I am. Boxing and waning goes to the heart of this case, and that is exactly what Dr. Boggan assessed after looking at and treating Ms. David for years. He opined that working on a regular and continuing basis would cause her condition to deteriorate and that she would miss work and require time to lie down. Now, the judge didn't specifically address that aspect of his opinion. Other portions of her finding get to it indirectly, but she did not acknowledge or specifically address that. And when she referenced clinically meaningful improvement, or actually that is what the commissioner is addressing now, the clinically meaningful improvement in Dr. Boggan's treatment notes, that has to be read in the context of the entire treatment note. And clinically meaningful improvement was used to justify continuing a particular treatment, which was trigger point injections. But if you look at some of the treatment notes where there is a reference to clinically meaningful improvement, for example, on January 25, 2017, she had 5 out of 10 pain, unstable sleep, foggy memory, and she had had two migraines since the last visit. In other words, Dr. Boggan understood that she would not be able to attend work on a regular basis, which is a requirement in social security cases, due to her fibromyalgia that boxes and wanes. Okay, thank you very much. Thank you both very much for your arguments. In the case of David v. Akita, Kazi is the man. Thank you very much. Chodosh v. Soldiers.
judges: BERZON, RAWLINSON, Dorsey